UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ERIC CHARLES KYLE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  No. 2:23-cv-00251-JMS-MG |
| CHAD PLATT I.D.O.C. Recreation Director, et al., | ) ) ) |
| KEITH HARTZEL Deputy Warden, | ) ) |
| Defendants. | ) ) |

**ORDER GRANTING DEFENDANTS' MOTIONFOR SUMMARY JUDGMENT**

Plaintiff, Eric Charles Kyle, an inmate at Plainfield Correctional Facility ("PCF" or "Plainfield"), brought this action alleging constitutional violations related to asbestos exposure at the PCF gymnasium. Dkt. 2. Defendants, Recreation Director David "Chad" Platt, and Deputy Warden Keith Hartzell, have moved for summary judgment. Dkt. 41. Both Defendants argue that summary judgment is proper because Mr. Kyle has not alleged that he suffered any injury, he was not subjected to an objectively serious condition, the defendants were not deliberately indifferent to the risk of asbestos exposure, and the defendants are entitledt to qualified immunity. Dkt 43. For the reasons explained in this Order, the defendants are entitled to summary judgment on all of Mr. Kyle's claims and the motion, dkt. [41] is **GRANTED**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to

the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Kyle and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

During the time period at issue, Mr. Eric Kyle was an inmate incarcerated at Plainfield. Dkt. 42-1 at 9 (Kyle's Deposition). Starting in November of 2020, he was hired at the prison as a rec worker for the sanitation department. *Id*. at 12, 16. As part of his job duties, Mr. Kyle would

wipe down equipment, sweep, mop and buffer the gym floor. *Id*. at 14. He also would also perform gym maintenance such as removing the floor tiles as they became loose. *Id*.

Defendant David "Chad" Platt was an employee at PCF and formally held the title of Recreation Coordinator. Dkt. 42-3 at 1. Mr. Platt served as Mr. Kyle's direct supervisor. Dkt. 42-1 at 14.

Defendant Keith Hartzell was an employee at PCF and served as the Deputy Warden of Reentry. Dk 42-2 at 1. In his role, he addressed general sanitation issues that were reported throughout PCF and would submit work orders or contact the maintenance supervisor directly depending on the issue. *Id*. On rare occasions, he would come to the gymnasium and talk with the rec workers. *Id*. at 36.

### B.  Mr. Kyle's Exposure to Asbestos and PCF Testing

In or about early 2022, the heating system in the PCF gym was not operational, and the cold temperatures within the building caused the tiles in the gym to slowly loosen, tile-by-tile. Dkt. 42-3 at 1. When tiles became loose, Defendant Platt or other recreational workers would remove them from the gym and place the discarded tiles in a closed room. *Id.* As part of his job, Mr. Kyle spent about nine to ten hours daily in the gymnasium.  Dkt. 42-1 at 15. When he noticed tiles becoming loose, Mr. Kyle was given a long metal bar with a flat blade at the end of it to wedge underneath the individual tiles and pop them loose from the adhesive adhering them to the floor. *Id*. at 15. They were then placed on a pushcart located in a closed room. Dkt. 42-3 at 1.

Mr. Kyle testified that that early on in the tile removal process, he notified Mr. Hartzell that more and more tiles were becoming loose, and Mr. Hartzell told him, "just hang on…we'll see what should be the proper circumstances to take care of the situation." Dkt 42-1 at 34. In November of 2021, Mr. Kyle asked Mr. Platt if they should simply remove all the tiles rather than waiting for

them to deteriorate individually. *Id*. at 16- 17. Mr. Platt responded that they would need Mr. Hartzell's approval before they could fully remove all tiles, and he instructed Mr. Kyle to just continue to remove the tiles as they became damaged. *Id*. Mr. Hartzell eventually came down to the gym and told the rec workers "it's all right to go ahead and start popping up the tiles." *Id*. at 35.

In his affidavit, Mr. Hartzell alleges he was not involved in any of the decisions surrounding removing the tiles within the gymnasium, closing the gym, or implementation of tile removal and asbestos remediation. Dkt. 42-2 at 1-2.

By May of 2022, Mr. Platt attested that he was instructed by PCF's physical plant director to remove the remaining tiles from the gym floor that had not already become loose from temperature fluctuations. Dkt. 42-3 at 1-2. Recreation workers then began removing all the tiles, whether they were loose or not, from the gym floor. Dkt. 42-1 at 21.

When Mr. Kyle would pop the tiles loose with the metal bar, the dust and debris from the tiles would become airborne. Dkt. 42-1 at 25. At times, the ventilation system in the PCF gym did not work, and the gym used large propane heat blowers to warm the space which stirred up more dust. *Id.* After the rec workers discussed their concerns about asbestos and airborne debris, Mr. Hartzell simply stated that during the removal, the workers should spray water on the floor to help with dust and debris. *Id*. at 35-36. Although Mr. Kyle discussed his concerns related to potential asbestos and tile contamination many times with Mr. Platt, Mr. Platt continued to direct the removal of the floor tiles. *Id*. at 20. Early on in the removal process, Mr. Kyle asked Mr. Platt for respirators to protect rec workers from contaminated dust and debris; however, Mr. Platt did not provide respirators to any of the workers. *Id*. at 23-24.

On May 17, 2022, PCF Plant Director Servizzi learned about the possibility of asbestos, and another IDOC employee sent correspondence to have the gym floor tested. Dkt. 42-4 at 1. On

4

May 26, 2022, August Mack Environmental, a licensed asbestos testing company, performed an assessment of the PCF gymnasium. Dkt. 42-5 at 1. The assessment, delivered to staff in mid-June, reported that there was asbestos containing material ("ACM") present within the gym and "the ACMs identified as part of this survey do not require abatement provided that these materials are maintained in good condition (or non-friable state), and they will not be disturbed or impacted (rendered friable) by any renovation or operations and maintenance activities." *Id*. at 3.

On June 1, the gym was closed, and IDOC placed red tape across the double doors with the words "ASBESTOS, DO NOT ENTER" on the tape. Dkt. 42-1 at 30. After the testing confirmed the presence of asbestos, Mr. Kyle and other inmates were not allowed within the gymnasium except to retrieve equipment for outdoor recreation. *Id*. at 27. Shortly thereafter, Mr. Kyle was relocated to Wabash Valley. *Id*. at 8. On August 4, 2023, August Mack again performed asbestos tests within the PCF gymnasium and determined that "all air samples collected within the gymnasium were determined to be below the AHERA clearance level… and therefore, meet the criteria." Dkt. 42-5 at 14-15.

Mr. Kyle has not experienced any symptoms or illnesses as a result of his exposure other than headaches. Dkt. 42-1 at 42. He did receive an x-ray at Wabash Valley which came back normal. *Id*. at 45.

### III.
### Discussion

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health

5

and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind — that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

Conditions of confinement must be severe to support an Eighth Amendment claim; "the prison officials' act or omission must result in the denial of 'the minimal civilized measure of life's necessities." *Id.* at 834. The Eighth Amendment only protects prisoners from conditions that exceed "contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994). In other words, "[a]n objectively sufficiently serious risk is one that society considers so grave that to expose any unwilling individual to it would offend contemporary standards of decency." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (quotation marks and citations omitted).

### A. Failure to Present Evidence of Injury

The Prison Litigation Reform Act ("Act") states that "(n)o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Mr. Kyle testified that he suffered no injury from his exposure to asbestos at PCF other than mild headaches. Dkt. 42-1 at 42. Rather, he states that he brings claims to recover potential future medical expenses that he could incur from the exposure in ten to twenty years-time. *Id.* at 42, 47. Although Defendants note that Mr. Kyle cannot sustain a claim without alleging an injury,

Mr. Kyle argues that under the pro se pleading standards established in *Erickson v. Pardus*, he need only plead the bare notice requirement as to the injuries he suffered. 551 U.S. 89, 94 (2007).

This is true. To survive the Rule 8(a)(2) requirements when alleging injuries within a complaint, plaintiffs need only present bare-bones allegations of harm. However, the pleading standard is a much lower bar than the summary judgment standard. And in that regard, Mr. Kyle has not met that burden. "Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (cleaned up).

Mr. Kyle has failed to support his damages claim with any evidence of injury. Like the plaintiff in *Dixon*, Mr. Kyle "offered only conclusory allegations" without specifically citing any harm outside of potential future harm. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir.1997). See *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997) (affirming dismissal of prisoner's Eighth amendment asbestos exposure claim where he did not show requisite physical injury). Mr. Kyle has failed to present any evidence showing actual injury from any of the conditions he claims existed at the PCF. For this reason, he has failed to meet injury requirement under the Act. *Gibson v. Ramsey*, No. 99 C 5315, 2004 WL 407025, at *7 (N.D. Ill. Jan. 29, 2004).

B. **Deliberate Indifference**

In the alternative, even if Mr. Kyle had presented sufficient evidence of injury, he still has not sufficiently proved that the defendants were deliberately indifferent to the risks of his exposure to asbestos. The record reflects that once Mr. Servizzi, Physical Plant Director, discovered that there was a possibility of asbestos present in the gym, IDOC staff promptly requested an assessment from a licensed asbestos testing company. Dkt. 42-4 at 1. And although there is conflicting evidence regarding the extent of Mr. Platt and Mr. Hartzell's involvement in the tile-

removal process, it is uncontested that both defendants did not definitively know that there was confirmed asbestos contamination until after August Mack performed their assessment in late May of 2022. Dkts. 41-1 at 20-22, 42-3 at 5, 42-4 at 1. When PCF staff received the results that confirmed the presence of asbestos in the gym, executive staff members promptly closed the facility and put signs on the door to prevent further exposure to inmates. Dkt. 42-1 at 30. Mr. Kyle has presented no evidence outside of conclusory allegations this was not the case or that David Platt or Keith Hartzell were deliberately indifferent in any of their actions after the gym was reopened. Plaintiff is the nonmoving party, so he receives "the benefit of conflicting evidence and reasonable inferences." *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). That said, he must "produce evidence sufficient to establish [the] element[s] essential to" his claim. *Id.* Accordingly, Defendants David Platt and Keith Hartzell's motion for summary judgment, dkt. [26], is **GRANTED**.[1]

## IV.
## Conclusion

Defendants David Platt and Keith Hartzell's motion for summary judgment is **GRANTED**. Dkt. [41].

Final Judgment shall now issue.

**IT IS SO ORDERED.**

Date: 2/19/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[1] Because the Court concludes that Defendants did not violate the Eighth Amendment, it need not address their alternative argument that they are entitled to qualified immunity.

Distribution:

ERIC CHARLES KYLE
527 S. Gilbert St.
Clinton, IN  47842

All Electronically Registered Counsel